**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**IN RE:** **Chapter 11**

**MANDS ELECTRIC NC LLC,**

**Case No.: 26-01997-5-DMW**

**Debtor.**

**CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY MANDS ELECTRIC NC LLC**

Dated: July 30, 2026

Respectfully submitted,

**WALDREP WALL BABCOCK & BAILEY PLLC**

*/s/ Jennifer B. Lyday*
Jennifer B. Lyday
N.C. Bar No. 39871
Ciara L. Rogers
N.C. State Bar No. 42571
Zachary Malnik
N.C. State Bar No. 61807
3600 Glenwood Avenue, Suite 210
Raleigh, NC 27612
Telephone: (919)-589-7985
Email: jlyday@waldrepwall.com

*Counsel for the Debtor*

**CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY MANDS ELECTRIC NC LLC**

Mands Electric NC LLC (the ***"Debtor'***) proposes the following plan of reorganization (the ***"Plan"***) pursuant to 11 U.S.C. § 1189:

**This Plan has been proposed by the Debtor using its most reasonable estimates given the Debtor's current cash position, its assets, projected recoveries, and claims asserted to date. That said, the claims bar date occurs subsequent to the Plan filing deadline imposed by 11 U.S.C. § 1189. Further, the Debtor is engaged in discussions with the Internal Revenue Service ("IRS") and believes that claims asserted by the IRS and the eventual resolution will have a material impact on the Debtor's treatment afforded to holders of Allowed Claims. As such, notice is given that the Debtor will seek to set confirmation of the Plan to a date that occurs after the claims bar date and further gives notice that the Debtor expects to file an amended Plan considering the resolution of the claim filed by the IRS.**

## ARTICLE I
## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below:

***"Actions"*** shall mean all actions that a trustee or debtor in possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person.

***"Administrative Claim"*** shall mean any Claim constituting a cost or expense of administration of the Debtor's Case that has been timely filed before the Administrative Claim Bar Date under sections 365(d)(3), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and of operating the business of the Debtor, (ii) any Post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, and (iii) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

***"Administrative Claim Bar Date"*** shall mean the date set by the Court for all creditors and parties in interest to file and serve Administrative Claims.

***"Administrative Claimant"*** shall mean the holder of an Administrative Claim.

***"Affiliate"*** shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

***"After Notice and a Hearing"*** shall have the meaning ascribed to it in section 102(1) of the Bankruptcy Code.

***"Allowed Amount"*** shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Rules, or the Court, or (c) the amount of a Claim is fixed by an order of the Court which has become a Final Order, or (d) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim, or Unsecured Claim include interest accrued on such Claim after the Petition Date.

***"Allowed Claim"*** shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

***"Allowed Equity Interest"*** shall mean any Equity Interest which has not been timely disputed, or if timely disputed, which has been allowed by order of the Court which has become a Final Order.

***"Article"*** shall mean one of the numbered articles of the Plan.

***"Asset(s)"*** shall mean any and all property of the Estate as defined under and included in Section 541(a) of the Bankruptcy Code, whether existing on the Petition Date or acquired after the Petition Date, including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature, including any and all Cash, real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, inventory, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of action, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

***"Assumed Contract"*** shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the parties) that is assumed by the Debtor pursuant to the Plan.

***"Avoidance Actions"*** shall mean any and all Actions accruing to the Debtor pursuant to chapter 5 of the Bankruptcy Code, including, without limitation, actions to recover money and/or property under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

***"Ballot"*** shall mean the ballot upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate

their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

***"Ballot Deadline"*** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

***"Bankruptcy Code"*** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

***"Business Day"*** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Wake County, North Carolina are authorized or required to close.

***"Case"*** shall mean the chapter 11 bankruptcy case Mands Electric NC, LLC, Case No. 26-01997-5-DMW, pending in the United States Bankruptcy Court for the Eastern District of North Carolina, Wilmington Division.

***"Cash"*** shall mean legal tender of the United States of America or its equivalents, including but not limited to bank deposits, checks and other similar items.

***"Claim"*** shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

***"Claims Bar Date"*** shall mean September 14, 2026, the last date for Creditors other than a governmental unit and holders of Equity Interests to file proofs of Claim or Equity Interest(s) in the Case, as set forth in the Notice of Chapter 11 Bankruptcy Case [ECF No. 10] and the Order to File Plan and Notice of Status Conference [ECF No. 12].

***"Class"*** shall mean a single Claim or Equity Interest, or group of Claims or Equity Interests, classified pursuant to Article V of the Plan and treated pursuant to Article VI of the Plan.

***"Code"*** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

***"Collateral"*** shall mean any property or interest in Property of the Debtor, or the Estate of the Debtor, in which the Debtor has an interest subject to a Lien that secures, in whole or in part, payment or performance of an Allowed Amount of a Secured Claim.

***"Confirmation"*** shall mean the entry by the Court of the Confirmation Order.

***"Confirmation Date"*** shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

***"Confirmation Hearing"*** shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

***"Confirmation Order"*** shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Proponent desires and shall otherwise be in a form and substance satisfactory to the Proponent.

***"Court"*** shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

***"Creditor(s)"*** shall mean any Person holding a Claim or Equity Interest, including Administrative Claimants and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

***"Debtor" or "Debtor in Possession"*** shall mean Mands Electric NC, LLC.

***"Disbursing Agent"*** shall mean the Debtor or the Reorganized Debtor.

***"Disputed Amount"*** shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

***"Disputed Claim"*** shall mean any Claim, including General Unsecured Claims, Priority Claims and Secured Claims, which has not yet been allowed and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent, or unliquidated. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or order of the Court.

***"Disputed Equity Interest"*** shall mean any Equity Interest which has not yet been allowed and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date fixed by the Court and which objection has not been withdrawn or determined by a Final Order, or which is listed on the Schedules as disputed, contingent, or unliquidated.

***"Distribution(s)"*** shall mean funds to be paid to holders of Allowed Claims or Equity Interests under the terms of the Plan.

***"Distribution Date"*** shall mean the dates upon which Distributions may be made pursuant to Article VII of the Plan.

***"Docket"*** shall mean the docket maintained in the Case by the Clerk of the Court.

***"ECF" or "ECF No."*** shall refer to the entries on the Docket.

***"Effective Date"*** shall mean fifteen (15) days following the Confirmation Date.

***"Entity"*** shall have the meaning set forth in section 101(15) of the Bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the Office of the Bankruptcy Administrator.

***"Equity Interest"*** shall mean any ownership or equity interest in the Debtor, including without limitation, membership interests, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtor.

***"Estate"*** shall mean the estate created pursuant to section 541 of the Bankruptcy Code.

***"Exculpated Parties"*** shall have the meaning ascribed to such term in Section 13.04 of the Plan.

***"Executory Contract"*** shall mean a contract or unexpired lease to which the Debtor is a party and that is executory within the meaning of section 365 of the Bankruptcy Code.

***"Face Amount"*** shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim, or (c) the amount of a Claim is fixed by an order of the Court which has become a Final Order, or (d) with respect to a Fee Request, the net amount to which the applicant would be entitled if its application were to be granted in full.

***"Fee Request"*** shall mean an application or request for payment by the Estate of fees, compensation for services rendered, or reimbursement of expenses pursuant to Rule 2016 of the Rules or other applicable provision of the Bankruptcy Code or the Rules.

***"Final" or "Final Order"*** shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Proponent, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired. If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Proponent may waive such requirement in accordance with the Plan.

***"General Unsecured Claim"*** shall have the same meaning as Unsecured Claim.

***"Governmental Claims Bar Date"*** shall mean October 28, 2026, the last date for a governmental unit to file a proof of Claim in the Case pursuant to Bankruptcy Rule 3002(c)(1) (180 days after the Petition Date).

***"Impaired"*** shall mean an Allowed Claim or Equity Interest that is Impaired within the meaning of section 1124 of the Code.

***"Insider(s)"*** shall mean those Persons defined in section 101(31)(B) of the Code.

***"IRS"*** shall mean the U.S. Internal Revenue Service, an agency of the United States of America.

***"Late Filed Claim"*** shall mean a Claim filed after the Claims Bar Date or the Governmental Claims Bar Date.

***"Lien"*** shall mean a charge against or interest, including a security interest (as security interest is defined in the Uniform Commercial Code), in any Property of the Estate to secure payment of a debt and/or monetary obligation or the performance and/or satisfaction of non-monetary obligations.

***"Objection Deadline"*** shall have the meaning ascribed to it in Article VII of the Plan.

***"Person"*** shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, Entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

***"Petition Date\\"*** shall mean May 1, 2026, the date on which the Debtor commenced the Case by filing a voluntary petition under subchapter V of chapter 11 of the Code.

***"Plan"*** shall mean this Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

***"Plan Documents"*** shall mean the documents to be filed as a part of the Plan Supplement.

***"Plan Supplement"*** shall mean any document or agreement which may be identified and otherwise filed with the Clerk of the Court in connection with, or support of, the Plan and Confirmation of the Plan and thereafter incorporated by reference in the Confirmation Order.

***"Plan Payment Period"*** shall mean the three (3) year period commencing on the Effective Date during which Distributions from the Class 9 Distribution Pool and other Plan payments funded by the Reorganized Debtor's projected disposable income shall be made to holders of Allowed Claims pursuant to the Plan.

***"Post-Petition"*** shall mean subsequent to the Petition Date.

***"Post-Petition Interest"*** shall mean all interest accrued but unpaid after the Petition Date on any Allowed Claim, which shall be calculated based upon the rate set forth in any contract (including any default rate, if applicable and authorized under the Code) evidencing the Claim and, if no such rate is set forth therein, then the legal rate of interest, which for purposes of this Plan shall mean the federal judgment rate of interest in effect on the Effective Date.

***"Pre-Petition"*** shall mean prior to the Petition Date.

***"Priority Claim(s)"*** shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507(a)(3)-(7) of the Code.

***"Priority Tax Claim"*** shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

***"Pro Rata"*** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed General Unsecured Claim or Disputed Equity Interest has not been finally resolved as of the Effective Date, an appropriate reserve for payment of such Disputed General Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient Cash available to make a Pro Rata Distribution to the holder of such Disputed General Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute, which reserve shall be in the amount of the Pro Rata Distribution the holder of such Disputed General Unsecured Claim or Disputed Equity Interest would have been entitled to receive under the Plan.

***"Professional(s)"*** shall mean any professional employed in this Case pursuant to sections 327, 328 or 1103 of the Code or otherwise pursuant to an order of the Court.

***"Property of the Estate"*** shall mean the property defined in section 541 of the Code.

***"Proponent"*** shall mean the Debtor.

***"Rejected Contract"*** shall mean an Executory Contract that is rejected at any time during the Case or pursuant to Article VII of the Plan.

***"Rejection Claim"*** shall mean a Claim arising under section 502(g) of the Code in its Allowed Amount.

***"Rejection Claim Bar Date"*** is defined in Section 8.03 of the Plan.

***"Reorganized Debtor"*** shall mean Mands Electric NC LLC as reorganized as of the Effective Date.

***"Rule(s)"*** shall mean the Federal Rules of Bankruptcy Procedure.

***"Schedules"*** shall mean the Schedules of assets and liabilities filed by the Debtor with the Court, as the same may be amended from time to time.

***"Section"*** shall mean a numbered subsection of any Article of the Plan.

***"Secured Claim"*** shall mean a Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a Lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under section 553 of the Bankruptcy Code, limited in each of case (a) or (b) to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in section 1111(b)(2) of the Bankruptcy Code.

***"Secured Creditor"*** shall mean the holder of a Secured Claim.

***"Subchapter V Trustee"*** shall mean the trustee appointed by the Office of the Bankruptcy Administrator pursuant to section 1183(a) of the Code to carry out the duties described in section 1183(b) of the Code.

***"Substantial Consummation"*** shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1193(b) of the Code, as described in Section 13.19 of the Plan.

***"Unimpaired"*** shall mean an Allowed Claim or Allowed Equity Interest that is not Impaired within the meaning of section 1124 of the Code.

***"United States"*** shall mean the United States of America.

***"Unsecured Claim"*** shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

***"Unsecured Creditor"*** shall mean the holder of an Unsecured Claim.

***"Rules of Construction and Interpretation"***

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include," "including," and similar terms shall be construed as if followed by the phrase "without being limited to."

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in no way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II

## BACKGROUND OF DEBTOR, COMMENCEMENT OF CHAPTER 11 CASE, AND RESTRUCTURING OF DEBTOR'S OBLIGATIONS

### 2.01. The Debtor

The Debtor is a North Carolina limited liability company headquartered at 845 Village Road NE, Leland, North Carolina 28451, with a second location at 3540 Triad Court, Unit 2, Winston-Salem, North Carolina 27107. The Debtor's federal tax identification number is 27-1786274. The Debtor provides electrical contracting services to new residential builds, ensuring that newly constructed homes have safe, code-compliant, and efficient electrical systems, operating primarily throughout central and coastal North Carolina. The Debtor is managed by Mark Anthony McGarity, its sole managing member.

Prior to the Petition Date, the Debtor experienced a decline in gross revenue from approximately $10,997,349 in fiscal year 2024 to approximately $10,094,812 in fiscal year 2025, and had generated approximately $2,869,574 in gross revenue for the portion of fiscal year 2026 ending on the Petition Date. Facing pressure on operating margins, the Debtor entered into a series of merchant cash advance ("MCA") and future-receivables purchase transactions, and the resulting daily and weekly debit obligations, together with related legal proceedings (including a New York state court action commenced by VerveFunding LLC seeking to enforce a personal guaranty), created liquidity pressure that made continued operations outside of chapter 11 impracticable. The Debtor filed this Case to stabilize its cash flow, address the MCA obligations, restructure its vehicle-secured debt, and continue serving its residential home-builder customers.

**2.02. <u>Commencement of Case</u>**

The Debtor commenced this Case on the Petition Date by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code and electing to proceed under subchapter V of chapter 11 pursuant to Bankruptcy Rule 1020 [ECF No. 1]. Since the Petition Date, the Debtor has continued to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the Petition Date, the Debtor was a party to (i) a civil action captioned Philip Nizoloski and Theresa Steffen v. True Homes, LLC, Case No. 25CV004310-090, pending in the Brunswick County Superior Court, and (ii) a breach-of-contract and personal-guaranty action captioned VerveFunding LLC dba Verve Funding, Index No. 808351/2026, pending in the Supreme Court of the State of New York.

**2.03. <u>Reserved.</u>**

**2.04. <u>Post-Petition Events</u>**

Following the Petition Date, the Debtor sought and obtained a series of orders necessary to stabilize operations, including: (i) an Order Granting Motion to Pay Pre-Petition Wages [ECF No. 34]; (ii) an Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 36]; (iii) an Order Directing Certain Creditors to Release UCC Liens Asserted in Certain of the Debtor's Cash Collateral Assets [ECF No. 37]; (iv) a Second Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 68]; and (v) a Third Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection [ECF No. 115]. The Bankruptcy Administrator conducted and concluded the meeting of creditors under section 341(a) of the Bankruptcy Code on June 16, 2026. On June 29, 2026, the Court held the subchapter V status conference required under 11 U.S.C. §1188(a). During the Case, the Debtor's Special Counsel obtained Rule 2004 examination orders directed to merchant cash advance counterparties [ECF No. 87] to investigate the validity, priority, and enforceability of their asserted claims and liens. On June 30, 2026, PNC Bank, National Association filed its Motion to Approve Consent Order [ECF No. 116], resolving the treatment of PNC's secured claim on the Debtor's Bobcat E32 Compact Excavator. On June 26, 2026, True Homes, LLC filed a Motion for Relief from Stay [ECF No. 110]. The Court also entered an Order Granting Application for Approval of Officer Compensation for Mark McGarity as managing member [ECF No. 109].

**2.05. <u>Reserved.</u>**

**2.06. Retained Professionals**

The Court has authorized the Debtor to retain certain Professionals in connection with the Case. Specifically, the Debtor has retained the law firm of Waldrep Wall Babcock & Bailey PLLC ("***Waldrep Wall***") as the Debtor's general bankruptcy counsel. See ECF Nos. 15, 61. In addition, the Debtor retained Richard P. Cook, PLLC ("***Special Counsel***") as special counsel with respect to the Debtor's merchant cash advance obligations and related Rule 2004 examinations. See ECF Nos. 17, 103.

Following the Petition Date, the Bankruptcy Administrator appointed Joseph Z. Frost, Esq. of Buckmiller & Frost, PLLC as the Subchapter V Trustee on May 4, 2026. ECF No. 9. Mr. Frost has filed his Affidavit of Disinterestedness [ECF No. 13] and continues to serve as the Subchapter V Trustee.

**2.07. The Claims Process**

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The Debtor will review, analyze, and resolve Claims on an ongoing basis as part of the claims reconciliation process. As such, the ultimate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Debtor's estimates herein. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## ARTICLE III

## PROVISIONS RELATING TO THE SUBCHAPTER V TRUSTEE

**3.01. Distributions Under Plan and Retention of Subchapter V Trustee**

Pursuant to section 1194 of the Bankruptcy Code, and regardless of whether the Plan is confirmed consensually under section 1191(a) of the Bankruptcy Code or non-consensually under section 1191(b) of the Code, the Reorganized Debtor, and not the Subchapter V Trustee, shall make all Distributions under the Plan. For more information regarding the method of Distributions under the Plan, see Section 7.02 of the Plan. The Subchapter V Trustee may remain in place following the Effective Date and, upon the request of the Subchapter V Trustee, the Reorganized Debtor shall provide financial statements to the Subchapter V Trustee. If the Plan is confirmed consensually under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service shall be terminated upon substantial consummation of the Plan.

## ARTICLE IV

## TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

The following Administrative Claims and Priority Tax Claims are Unimpaired under the Plan and will be treated as follows:

### 4.01. Allowed Administrative Claims

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the Debtor and the holder of such Allowed Administrative Claim. All other holders of Allowed Administrative Claims (with the exception of the Debtor's Professionals, the Subchapter V Trustee, and those Administrative Claims otherwise specifically classified and treated in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in Cash, unless otherwise ordered by the Bankruptcy Court, upon the later of (i) the Effective Date, or (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

Waldrep Wall and any other Professional retained by the Debtor in the Case, and the Subchapter V Trustee shall file a final Fee Request with the Court for an award of compensation of fees and reimbursement of expenses pursuant to sections 330 and 503 of the Bankruptcy Code by the deadline to be established by the Court. Such final Fee Requests will be considered by the Court at the Confirmation Hearing. The Allowed Amounts of the Administrative Claims awarded to Waldrep Wall, the Subchapter V Trustee, and any other Professional shall be payable by the Effective Date of the Plan. Nothing herein shall preclude any Professional from filing an interim Fee Request in the Case pursuant to section 331 of the Bankruptcy Code or additional fee requests following the Effective Date.

### 4.02. Priority Tax Claims

The Debtor is aware of two (2) holders of Priority Tax Claims entitled to priority under section 507(a)(8) of the Bankruptcy Code: the IRS and the North Carolina Department of Revenue (the "***NCDOR***"). The Allowed Priority Tax Claims of the IRS and the NCDOR shall be treated as set forth in this Section 4.02.

(a) Internal Revenue Service. The IRS filed proof of claim No. 25 asserting a claim in the aggregate amount of $16,563,704.26. The Debtor disputes the amount asserted in the IRS's proof of claim and, as set forth in the introductory provisions of this Plan, is engaged in ongoing discussions with the IRS regarding the appropriate Allowed Amount of the IRS's Priority Tax Claim. The Debtor expects to file an amended Plan reflecting the resolution of the IRS claim. Except to the extent the IRS agrees to different treatment, the Allowed Priority Tax Claim of the IRS shall be paid in accordance with Section 4.02(c) below, together with interest at the applicable federal underpayment rate under 26 U.S.C. § 6621 in effect as of the Effective Date.

(b) North Carolina Department of Revenue. The NCDOR filed proof of claim No. 2-1 on May 6, 2026, asserting a Claim in the aggregate amount of $15,844.90 on account of taxes, of which $11,829.83 is asserted as entitled to priority under section 507(a)(8) of the Bankruptcy Code. Except to the extent the NCDOR agrees to different treatment, the Allowed priority portion

of the NCDOR's Claim shall be treated as an Allowed Priority Tax Claim and paid in accordance with Section 4.02(c) below, together with interest at the applicable statutory rate established under N.C. Gen. Stat. § 105-241.21 in effect as of the Effective Date. The remaining portion of the NCDOR's Claim, in the approximate amount of $4,015.07, to the extent Allowed and not entitled to priority under section 507(a)(8) of the Bankruptcy Code, shall be treated as an Allowed General Unsecured Claim in Class 9. The Debtor reserves the right to object to the NCDOR's Claim.

(c) Treatment. Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Bankruptcy Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Claim, deferred Cash payments over a period ending not later than five (5) years after the Petition Date in a total value, as of the Effective Date, equal to the Allowed Amount of such Priority Tax Claim, together with interest at the applicable statutory rate specified in Section 4.02(a) or (b) above, as applicable, in equal monthly installments commencing on the first (1st) day of the first full calendar month following the Effective Date, consistent with 11 U.S.C. § 1129(a)(9)(C). The Debtor reserves the right to prepay any Allowed Priority Tax Claim, in whole or in part, without penalty. The Debtor further reserves the right to object to any Priority Tax Claim and to seek a determination of the Debtor's tax liability under section 505 of the Bankruptcy Code.

## ARTICLE V

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For purposes of this Plan, the Classes of Claims and Equity Interests against or in the Debtor shall be as follows:

***"Class 1"*** shall mean the Allowed Secured Claim of Ally Bank c/o AIS Portfolio Services, LLC ("***Ally Bank***"), as described, classified, and treated in Section 6.01 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

***"Class 2"*** shall mean the Allowed Secured Claims of AmeriCredit Financial Services, Inc. d/b/a GM Financial ("***GM Financial***"), as described, classified, and treated in Section 6.02 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 2 Claims is entitled to vote to accept or reject the Plan.

***"Class 3"*** shall mean the Allowed Secured Claim of JPMorgan Chase Bank, N.A. ("***Chase***"), as described, classified, and treated in Section 6.03 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

***"Class 4"*** shall mean the Allowed Secured Claim of TD Auto Finance LLC ("***TD Auto***"), as described, classified, and treated in Section 6.04 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

***"Class 5"*** shall mean the Allowed Secured Claim of Towne Bank ("***Towne Bank***"), as described, classified, and treated in Section 6.05 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

***"Class 6"*** shall mean the Allowed Secured Claim of Santander Consumer USA Inc. ("***Santander***"), as described, classified, and treated in Section 6.06 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

***"Class 7"*** shall mean the Allowed Secured Claim of PNC Bank, National Association ("***PNC***"), as described, classified, and treated in Section 6.07 of this Plan. This Class is Unimpaired within the meaning of section 1124 of the Code. Accordingly, the holder of the Allowed Class 7 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

***"Class 8"*** shall mean the Allowed Claims of the MCA Creditors (as defined in Section 6.08), as described, classified, and treated in Section 6.08 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holders of Allowed Class 8 Claims are entitled to vote to accept or reject the Plan.

***"Class 9"*** shall mean the Allowed General Unsecured Claims, as described, classified, and treated in Section 6.09 of this Plan. This Class is Impaired within the meaning of section 1124 of the Code. Accordingly, the holders of Allowed Class 9 Claims are entitled to vote to accept or reject the Plan. Class 9 includes the Deficiency Claims of Ally Bank, GM Financial, Chase, TD Auto, Towne Bank, and Santander, together with all scheduled and filed nonpriority general unsecured claims.

***"Class 10"*** shall mean the Allowed Equity Interests, as described, classified, and treated in Section 6.10 of this Plan. This Class is Unimpaired and deemed to have accepted the Plan.

## ARTICLE VI

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 6.01. Class 1. Allowed Secured Claim of Ally Bank

(a) Description. Class 1 consists of the Allowed Secured Claims of Ally Bank, arising from ten (10) proofs of claim filed as Claim Nos. 3, 5, 14, 15, 17, 18, 19, 20, 21, and 22, each secured by a perfected first-priority purchase-money security interest in a titled motor vehicle owned by the Debtor. In the exercise of its business judgment, the Debtor has determined to retain two (2) of the vehicles securing Ally Bank's claims (the "***Ally Retained Vehicles***") and to surrender the remaining eight (8) vehicles to Ally Bank. Based upon the Kelley Blue Book valuations reflected on the Debtor's Schedule A/B and Schedule D and set forth in the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by Ally Bank Pursuant to 11 U.S.C. § 506(a) (the "***Ally Valuation Motion***"), the Ally Retained Vehicles and the corresponding Allowed Secured Claims are as follows: (i) 2024 Chevrolet Silverado 2500HD, VIN 1GC4YLE74RF373909 (Claim No. 19; filed claim $49,837.10), Allowed Secured Claim of

$38,942.00 and Deficiency Claim of $10,895.10; and (ii) 2025 Chevrolet Silverado, VIN 3GCPAAEK2SG320429 (Claim No. 21; filed claim $43,727.19), Allowed Secured Claim of $28,700.00 and Deficiency Claim of $15,027.19.

The eight (8) vehicles to be surrendered to Ally Bank (the "***Ally Surrendered Vehicles***") are: (1) 2023 Chevrolet Colorado WT 2WD, VIN 1GCPSBEK2P1156231 (Claim No. 15); (2) 2023 Chevrolet Colorado WT, VIN 1GCPSBEK3P1149263 (Claim No. 5); (3) 2023 Chevrolet Colorado, VIN 1GCPSBEK0P1149253 (Claim No. 14); (4) 2024 Chevrolet Colorado, VIN 1GCPSBEK7R1115152 (Claim No. 18); (5) 2022 Chevrolet Silverado 1500, VIN 3GCNWAED1NG164723 (Claim No. 20); (6) 2022 Dodge Ram 1500, VIN 3C6JR6DGXNG374517 (Claim No. 17); (7) 2022 Chevrolet Colorado WT, VIN 1GCGTBEN8N1329214 (Claim No. 3); and (8) 2024 Chevrolet Silverado 1500, VIN 1GCRAAEKXRZ397875 (Claim No. 22).

(b) Treatment. Ally Bank shall have Allowed Class 1 Secured Claims aggregating $67,642.00, comprising the Allowed Secured Claims set forth in Section 6.01(a) above. In full satisfaction, settlement, release, extinguishment and discharge of Ally Bank's Allowed Class 1 Secured Claims, the Debtor will pay Ally Bank, with respect to each Ally Retained Vehicle, the Allowed Secured Claim for that vehicle together with interest at the Till rate of 8.75% per annum, amortized separately over sixty (60) months in equal monthly installments commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until each Allowed Secured Claim is paid in full, as follows: (i) with respect to Claim No. 19 (2024 Chevrolet Silverado 2500HD), sixty (60) equal monthly installments of $803.65; and (ii) with respect to Claim No. 21 (2025 Chevrolet Silverado), sixty (60) equal monthly installments of $592.28. As security for the payments due under the Plan, Ally Bank shall retain its prepetition security interest in each Ally Retained Vehicle until the Allowed Secured Claim as to that vehicle is paid in full. Ally Bank cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. Upon entry of an order granting the Ally Valuation Motion, the Debtor is authorized to surrender the Ally Surrendered Vehicles to Ally Bank, and any deficiency remaining after such surrender shall be treated as a Class 9 General Unsecured Claim. In addition, Ally Bank shall have Allowed Class 9 General Unsecured Deficiency Claims with respect to the Ally Retained Vehicles aggregating $25,922.29 (the "***Ally Deficiency Claims***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 1 Secured Claims of Ally Bank are Impaired. Accordingly, Ally Bank is entitled to vote to accept or reject the Plan.**

**6.02. <u>Class 2. Allowed Secured Claims of GM Financial</u>**

(a) Description. Class 2 consists of the Allowed Secured Claims of GM Financial, arising from eight (8) proofs of claim filed as Claim Nos. 6, 7, 8, 9, 10, 11, 12, and 13, each secured by a perfected first-priority purchase-money security interest in a titled motor vehicle owned by the Debtor. In the exercise of its business judgment, the Debtor has determined to retain three (3) of the vehicles securing GM Financial's claims (the "***GM Retained Vehicles***") and to surrender the remaining five (5) vehicles to GM Financial. Based upon the Kelley Blue Book valuations

reflected on the Debtor's Schedule A/B and Schedule D and set forth in the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by GM Financial Pursuant to 11 U.S.C. § 506(a) (the "***GM Valuation Motion***"), the GM Retained Vehicles and the corresponding Allowed Secured Claims are as follows: (i) 2024 Chevrolet Silverado 1500, VIN 1GCRAAEK1RZ352761 (Claim No. 6; filed claim $37,365.52), Allowed Secured Claim of $22,350.00 and Deficiency Claim of $15,015.52; (ii) 2021 Chevrolet Silverado 1500, VIN 1GCUYEEL4MZ406424 (Claim No. 8; filed claim $46,452.88), Allowed Secured Claim of $34,569.00 and Deficiency Claim of $11,883.88; and (iii) 2025 Chevrolet Silverado 1500, VIN 1GCRAAEK7SZ128223 (Claim No. 12; filed claim $41,292.00), Allowed Secured Claim of $30,320.00 and Deficiency Claim of $10,972.00.

The five (5) vehicles to be surrendered to GM Financial (the "***GM Surrendered Vehicles***") are: (1) 2024 Chevrolet Silverado 1500, VIN 1GCPAAED2RZ162380 (Claim No. 7); (2) 2021 Chevrolet Silverado 1500, VIN 3GCUYHEL1MG188542 (Claim No. 9); (3) 2020 Chevrolet Silverado 1500, VIN 3GCPYFEL9LG421874 (Claim No. 10); (4) 2022 RAM 1500 Classic, VIN 3C6JR6DG1NG374521 (Claim No. 11); and (5) 2022 Chevrolet Silverado 1500, VIN 3GCNAAED2NG554373 (Claim No. 13).

(b) Treatment. GM Financial shall have Allowed Class 2 Secured Claims aggregating $87,239.00, comprising the Allowed Secured Claims set forth in Section 6.02(a) above. In full satisfaction, settlement, release, extinguishment and discharge of GM Financial's Allowed Class 2 Secured Claims, the Debtor will pay GM Financial, with respect to each GM Retained Vehicle, the Allowed Secured Claim for that vehicle together with interest at the Till rate of 8.75% per annum, amortized separately over sixty (60) months in equal monthly installments commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until each Allowed Secured Claim is paid in full, as follows: (i) with respect to Claim No. 6 (2024 Chevrolet Silverado 1500), sixty (60) equal monthly installments of $461.24; (ii) with respect to Claim No. 8 (2021 Chevrolet Silverado 1500), sixty (60) equal monthly installments of $713.40; and (iii) with respect to Claim No. 12 (2025 Chevrolet Silverado 1500), sixty (60) equal monthly installments of $625.71. As security for the payments due under the Plan, GM Financial shall retain its prepetition security interest in each GM Retained Vehicle until the Allowed Secured Claim as to that vehicle is paid in full. GM Financial cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. Upon entry of an order granting the GM Valuation Motion, the Debtor is authorized to surrender the GM Surrendered Vehicles to GM Financial, and any deficiency remaining after such surrender shall be treated as a Class 9 General Unsecured Claim. In addition, GM Financial shall have Allowed Class 9 General Unsecured Deficiency Claims with respect to the GM Retained Vehicles aggregating $37,871.40 (the "***GM Deficiency Claims***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 2 Secured Claims of GM Financial are Impaired. Accordingly, GM Financial is entitled to vote to accept or reject the Plan.**

**6.03. <u>Class 3. Allowed Secured Claim of JPMorgan Chase Bank, N.A.</u>**

(a) Description. Class 3 consists of the Allowed Secured Claim of Chase, arising from proof of claim No. 24 (filed claim amount of $26,482.46), secured by a perfected first-priority purchase-money security interest in one (1) titled motor vehicle owned by the Debtor: a 2022 Chevrolet Silverado 1500, VIN 3GCNAAEDXNG592062 (the "***Chase Vehicle***"). Based upon the Kelley Blue Book valuation reflected on the Debtor's Schedule A/B and Schedule D and set forth in the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by Chase Pursuant to 11 U.S.C. § 506(a) (the "***Chase Valuation Motion***"), the value of the Chase Vehicle, and the Allowed Secured Claim, is $17,190.00, with a corresponding Deficiency Claim of $9,292.46.

(b) Treatment. Chase shall have an Allowed Class 3 Secured Claim in the amount of $17,190.00. In full satisfaction, settlement, release, extinguishment and discharge of Chase's Allowed Class 3 Secured Claim, the Debtor will pay Chase the Allowed Secured Claim together with interest at the Till rate of 8.75% per annum, amortized over sixty (60) months in sixty (60) equal monthly installments of $354.75, commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until the Allowed Secured Claim is paid in full. As security for the payments due under the Plan, Chase shall retain its prepetition security interest in the Chase Vehicle until the Allowed Class 3 Secured Claim is paid in full. Chase cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. In addition, Chase shall have an Allowed Class 9 General Unsecured Deficiency Claim of $9,292.46 (the "***Chase Deficiency Claim***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 3 Secured Claim of Chase is Impaired. Accordingly, Chase is entitled to vote to accept or reject the Plan.**

**6.04. Class 4. Allowed Secured Claim of TD Auto Finance LLC**

(a) Description. Class 4 consists of the Allowed Secured Claim of TD Auto, secured by a perfected first-priority purchase-money security interest in one (1) titled motor vehicle owned by the Debtor: a 2024 Chevrolet Silverado 2500HD WT, VIN 1GB1WLE79RF149337 (the "***TD Auto Vehicle***"). As of the filing of the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by TD Auto Pursuant to 11 U.S.C. § 506(a) (the "***TD Auto Valuation Motion***"), TD Auto had not filed a proof of claim, and the Debtor has relied on its Schedule D scheduled claim amount of $50,850.92. Based upon the Kelley Blue Book valuation reflected on the Debtor's Schedule A/B and Schedule D, the value of the TD Auto Vehicle, and the Allowed Secured Claim, is $37,900.00, with a corresponding Deficiency Claim of $12,950.92.

(b) Treatment. TD Auto shall have an Allowed Class 4 Secured Claim in the amount of $37,900.00. In full satisfaction, settlement, release, extinguishment and discharge of TD Auto's Allowed Class 4 Secured Claim, the Debtor will pay TD Auto the Allowed Secured Claim together with interest at the Till rate of 8.75% per annum, amortized over sixty (60) months in sixty (60) equal monthly installments of $782.14, commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until the Allowed Secured Claim is paid in full. As security for the payments due

under the Plan, TD Auto shall retain its prepetition security interest in the TD Auto Vehicle until the Allowed Class 4 Secured Claim is paid in full. TD Auto cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. In addition, TD Auto shall have an Allowed Class 9 General Unsecured Deficiency Claim of $12,950.92 (the "***TD Auto Deficiency Claim***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 4 Secured Claim of TD Auto is Impaired. Accordingly, TD Auto is entitled to vote to accept or reject the Plan.**

**6.05. Class 5. Allowed Secured Claim of Towne Bank**

(a) Description. Class 5 consists of the Allowed Secured Claim of Towne Bank, secured by a perfected first-priority purchase-money security interest in one (1) titled motor vehicle owned by the Debtor: a 2024 Chevrolet Colorado, VIN 1GCPTBEK0R1186738 (the "***Towne Bank Vehicle***"). As of the filing of the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by Towne Bank Pursuant to 11 U.S.C. § 506(a) (the "***Towne Bank Valuation Motion***"), Towne Bank had not filed a proof of claim, and the Debtor has relied on its Schedule D scheduled claim amount of $35,295.55. Based upon the Kelley Blue Book valuation reflected on the Debtor's Schedule A/B and Schedule D, the value of the Towne Bank Vehicle, and the Allowed Secured Claim, is $21,447.00, with a corresponding Deficiency Claim of $13,848.55.

(b) Treatment. Towne Bank shall have an Allowed Class 5 Secured Claim in the amount of $21,447.00. In full satisfaction, settlement, release, extinguishment and discharge of Towne Bank's Allowed Class 5 Secured Claim, the Debtor will pay Towne Bank the Allowed Secured Claim together with interest at the Till rate of 8.75% per annum, amortized over sixty (60) months in sixty (60) equal monthly installments of $442.61, commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until the Allowed Secured Claim is paid in full. As security for the payments due under the Plan, Towne Bank shall retain its prepetition security interest in the Towne Bank Vehicle until the Allowed Class 5 Secured Claim is paid in full. Towne Bank cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. In addition, Towne Bank shall have an Allowed Class 9 General Unsecured Deficiency Claim of $13,848.55 (the "***Towne Bank Deficiency Claim***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 5 Secured Claim of Towne Bank is Impaired. Accordingly, Towne Bank is entitled to vote to accept or reject the Plan.**

**6.06. Class 6. Allowed Secured Claim of Santander Consumer USA Inc.**

(a) Description. Class 6 consists of the Allowed Secured Claim of Santander, arising from proof of claim No. 23 (filed claim amount of $38,112.53), secured by a perfected first-priority purchase-money security interest in one (1) titled motor vehicle owned by the Debtor: a 2024 Chevrolet Silverado 1500, VIN 1GCRAAEK7RZ352909 (the "***Santander Vehicle***"). Based

upon the Kelley Blue Book valuation reflected on the Debtor's Schedule A/B and Schedule D and set forth in the Debtor's Motion to Value Collateral and Determine Secured Status of Liens Held by Santander Pursuant to 11 U.S.C. § 506(a) (the "***Santander Valuation Motion***"), the value of the Santander Vehicle, and the Allowed Secured Claim, is $22,110.00, with a corresponding Deficiency Claim of $16,002.53.

(b) Treatment. Santander shall have an Allowed Class 6 Secured Claim in the amount of $22,110.00. In full satisfaction, settlement, release, extinguishment and discharge of Santander's Allowed Class 6 Secured Claim, the Debtor will pay Santander the Allowed Secured Claim together with interest at the Till rate of 8.75% per annum, amortized over sixty (60) months in sixty (60) equal monthly installments of $456.29, commencing on the first (1st) day of the first full calendar month following the Effective Date and continuing on the first day of each month thereafter until the Allowed Secured Claim is paid in full. As security for the payments due under the Plan, Santander shall retain its prepetition security interest in the Santander Vehicle until the Allowed Class 6 Secured Claim is paid in full. Santander cannot seek to use self-help to realize on its collateral until a missed payment has been outstanding for thirty (30) days. In addition, Santander shall have an Allowed Class 9 General Unsecured Deficiency Claim of $16,002.53 (the "***Santander Deficiency Claim***"), payable pursuant to the treatment of Class 9 set forth in Section 6.09.

**(c) Impairment. The Allowed Class 6 Secured Claim of Santander is Impaired. Accordingly, Santander is entitled to vote to accept or reject the Plan.**

**6.07. <u>Class 7. Allowed Secured Claim of PNC Bank, National Association</u>**

(a) Description. Class 7 consists of the Allowed Secured Claim of PNC, arising from proof of claim No. 27 in the amount of $27,061.36 (scheduled at $27,624.40 on Schedule D), secured by a perfected first-priority purchase-money security interest in the Debtor's Bobcat E32 Compact Excavator (the "***PNC Collateral***"), which the Debtor scheduled at a value of $50,000.00. PNC is therefore fully secured with respect to its claim.

(b) Treatment. Class 7 is Unimpaired. In accordance with that certain Consent Order between the Debtor and PNC approved by the Motion to Approve Consent Order [ECF No. 116] (the "***PNC Consent Order***"), the legal, equitable, and contractual rights of PNC are left unaltered, and PNC shall be paid in full in accordance with the existing terms of its loan documents. The Debtor shall continue to service the PNC obligation in the ordinary course of business in accordance with the existing terms of the applicable loan documents, and PNC shall retain its prepetition security interest in the PNC Collateral until PNC's Allowed Class 7 Secured Claim is paid in full. Nothing in the Plan shall be deemed to modify, impair, or otherwise alter the terms of PNC's loan documents or the PNC Consent Order, and to the extent of any conflict between the Plan and the PNC Consent Order, the PNC Consent Order shall control.

**(c) Impairment. The Allowed Class 7 Secured Claim of PNC is Unimpaired. Accordingly, PNC is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.**

**6.08. Class 8. Allowed Claims of MCA Creditors**

(a) Description. Class 8 consists of the Allowed Claims of the merchant cash advance creditors of the Debtor (collectively, the "***MCA Creditors***"), each of which asserts, or may assert, an interest in the Debtor's future receivables or other accounts pursuant to a purported future-receivables purchase agreement (each, an "***MCA Agreement***" and, collectively, the "***MCA Agreements***") and, in certain cases, a related UCC-1 financing statement. Based on the Debtor's Schedules, the MCA Creditors and their scheduled claim amounts are: (i) Fox Funding Group LLC in the scheduled amount of $385,849.00 (Schedule D, UCC-1); (ii) Verve Funding in the scheduled amount of $196,743.74 (Schedule D, UCC-1); (iii) Avion Funding HC LLC in the scheduled amount of $131,162.50 (Schedule E/F, money loaned); (iv) Eliot Ventures LLC in the scheduled amount of $30,000.00 (Schedule E/F, money loaned); (v) MCI Group LLC d/b/a Fyncap Servicing in the scheduled amount of $182,812.50 (Schedule E/F, money loaned); (vi) SQ Advance in the scheduled amount of $49,966.66 (Schedule E/F, money loaned); (vii) Trofeo Capital LLC in the scheduled amount of $174,275.00 (Schedule E/F, money loaned); and (viii) Unique Funding Solutions LLC in the scheduled amount of $175,000.00 (Schedule E/F, money loaned). The Debtor scheduled Fox Funding Group LLC and Verve Funding on Schedule D at a collateral value of $0.00, and the Debtor disputes the validity, extent, priority, and enforceability of the security interests, if any, asserted by any MCA Creditor. The Debtor is a service business that generates accounts and receivables through the post-petition performance of electrical contracting services and did not hold any vested property right in the future receivables purportedly sold or encumbered under the MCA Agreements at the time those agreements were executed.

(b) Basis for Separate Classification and Treatment. The Debtor separately classifies the Class 8 Claims from the Allowed General Unsecured Claims in Class 9 because the MCA Creditors assert ownership and security interests in the Debtor's future receivables that the Debtor disputes, and because the Class 8 Claims are subject to recharacterization, objection, subordination, and avoidance on grounds that do not apply to the ordinary trade and other general unsecured claims classified in Class 9. The Debtor's position, without prejudice to the rights reserved in Section 6.08(d) below, is that no MCA Creditor holds an ownership interest in, or an enforceable security interest in, the Debtor's post-petition receivables, and that each MCA Creditor instead holds a wholly unsecured, non-priority Claim against the Estate.

*No transfer of ownership.* Each MCA Agreement purports to effect a present sale of the Debtor's future receivables. A debtor cannot, however, presently sell property that does not yet exist and in which it holds only an expectancy, consistent with the fundamental principle that *nemo dat quod non habet*—one cannot give what one does not have. When the MCA Agreements were executed before the Petition Date, the Debtor held no vested property right in its future receivables, but only a hope that such receivables might later arise from the future performance of services, and a mere expectancy of future receivables dependent upon future services cannot be the subject of a completed sale transaction. Section 9-318(a) of the Uniform Commercial Code, on which certain MCA Creditors rely, does not alter this result, because it presupposes the existence of a property right capable of conveyance, and a hope of future receivables is not "property" within the meaning of U.C.C. § 9-318(a) or U.C.C. § 9-102(a)(12). Moreover, the receivables generated by the Debtor's post-petition performance of electrical contracting services

are property of the Estate under section 541(a)(7) of the Bankruptcy Code, which the Debtor lacked authority to convey before the Petition Date.

*No enforceable security interest.* To the extent any MCA Agreement is construed to grant a security interest rather than to effect a sale, that interest does not attach to the Debtor's post-petition receivables. Under U.C.C. § 9-203(b)(2), a security interest cannot attach unless the debtor has rights in the collateral or the power to transfer rights in the collateral, and the Debtor had neither vested rights in, nor the power to transfer, its post-petition receivables when it entered into the MCA Agreements before the Petition Date. In addition, section 552(a) of the Bankruptcy Code provides that property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case. Because the Debtor is a service business whose post-petition receivables are earned through the post-petition performance of services, those receivables are not identifiable proceeds of any prepetition collateral, and the exception under U.C.C. § 9-315 for identifiable proceeds of collateral does not apply.

*Recharacterization as disguised financing.* Independent of the foregoing, the MCA Agreements are subject to recharacterization as secured or unsecured loans rather than true sales. In distinguishing a sale from a loan, courts place the greatest weight on the transfer of risk: where the funder is effectively entitled to repayment under all circumstances, the risk of loss remains with the merchant and the transaction is properly treated as a loan. Courts also consider three non-dispositive factors: (i) whether the agreement contains a finite term; (ii) whether it contains a meaningful reconciliation provision; and (iii) whether it affords the funder recourse in the event of the merchant's bankruptcy or default, including through personal guaranties. The Debtor submits that the MCA Agreements, which are supported by personal guaranties and recourse provisions and which do not genuinely transfer the risk of nonpayment to the MCA Creditors, reflect financing transactions that are subject to reorganization under the Plan.

*Good faith.* The proposed treatment of the Class 8 Claims is consistent with the good-faith requirement of section 1129(a)(3) of the Bankruptcy Code. A plan satisfies section 1129(a)(3) where it is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, assessed considering the totality of the circumstances. Because the MCA Creditors hold neither an ownership interest in nor an enforceable security interest in the Debtor's post-petition receivables, the Debtor may use the income derived from its post-petition operations to fund the Plan, and the Plan has a reasonable hope of success.

(c) Treatment. Except to the extent that a holder of an Allowed Class 8 Claim has been paid prior to the Effective Date or agrees to different treatment, each holder of an Allowed Class 8 Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Class 8 Claim, its Pro Rata share of a total distribution pool of $5,000.00 (the "***Class 8 Distribution Pool***"), payable in accordance with Article VII of the Plan. For the avoidance of doubt, the Allowed Class 8 Claims are separately classified from, and shall not share in the Distributions made to holders of, Allowed General Unsecured Claims in Class 9**.**

*Contingent Treatment of Secured MCA Claims.* Notwithstanding the foregoing and the Debtor's position set forth in Section 6.08(b), in the event the Court enters a Final Order determining that

any MCA Creditor holds an Allowed Secured Claim, then, except to the extent that the holder of such Allowed Secured Claim has been paid prior to the Effective Date or agrees to different treatment, such holder shall receive, in full satisfaction, settlement, release, extinguishment and discharge of its Allowed Secured Claim, deferred Cash payments in an aggregate amount equal to such Allowed Secured Claim, together with interest at the SOFR rate in effect as of the Effective Date (which, for reference, was 3.62% per annum as of the date of this Plan), amortized over a period of three (3) years and payable in equal annual installments commencing on the first (1st) anniversary of the Effective Date and continuing on each anniversary thereafter until such Allowed Secured Claim is paid in full. Such treatment is intended to provide the holder of an Allowed Secured Claim with deferred Cash payments having a value, as of the Effective Date, equal to the amount of such Allowed Secured Claim, consistent with sections 1129(b)(2)(A) and 1191(c) of the Bankruptcy Code.

(d) Reservation of Rights. Nothing in this Section 6.08 or elsewhere in the Plan shall constitute an admission by the Debtor that any MCA Creditor holds an Allowed Claim, an ownership interest in any property of the Debtor or the Estate, or a valid, perfected, or enforceable Lien or security interest in any property of the Debtor or the Estate. The Debtor and the Reorganized Debtor expressly reserve all rights, including the right to object to any Class 8 Claim on any ground; to seek recharacterization of any MCA Agreement as a secured or unsecured loan; to seek equitable subordination of any Class 8 Claim under section 510(c) of the Bankruptcy Code; to determine the validity, extent, priority, and enforceability of any Lien or security interest asserted by any MCA Creditor pursuant to section 506(a) of the Bankruptcy Code and Rule 3012 of the Rules; and to commence and prosecute any Avoidance Action or other Action against any MCA Creditor. If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, the Debtor further reserves the right to modify the Plan pursuant to section 1193(c) of the Bankruptcy Code and Section 13.07 of the Plan to account for the resolution of any dispute concerning any MCA Creditor's Claim or asserted interests.

**(e) Impairment. The Allowed Class 8 Claims are Impaired. Accordingly, each holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.**

**6.09. <u>Class 9. Allowed General Unsecured Claims</u>**

(a) Description. Class 9 consists of the Allowed General Unsecured Claims against the Debtor, including but not limited to (i) the Ally Deficiency Claims, the GM Deficiency Claims, the Chase Deficiency Claim, the TD Auto Deficiency Claim, the Towne Bank Deficiency Claim, and the Santander Deficiency Claim (collectively, the "***Vehicle Deficiency Claims***"); (ii) all nonpriority general unsecured claims scheduled on the Debtor's Schedule E/F (other than Priority Tax Claims, MCA Creditor claims classified in Class 8, and post-petition wage claims paid pursuant to Court Order), including without limitation trade claims held by Copperweld Bimetallics LLC ($490,259.75), Womack Electric & Supply Company ($806,833.00), Graybar Electric Supply ($3,115.81), Lucent Lighting Inc. ($11,995.88), State Electric Supply Company ($14,586.29), credit card claims held by CapitalOne Business - Spark Card ($103,171.00), Synchrony Bank - Lowes ($54,922.67), Capital On Tap ($19,500.00), Farm Bureau Bank Visa ($1,297.65), Wex Bank ($13,811.74), and any Allowed Claim of Web Bank ($151,570.96); and (iii) all Allowed Rejection Claims. Without prejudice, the Debtor estimates that Class 9 may

consist of Allowed General Unsecured Claims in an amount as high as approximately $1,671,064.75 as scheduled, plus Allowed Vehicle Deficiency Claims.

(b) Treatment. Except to the extent that a holder of an Allowed Class 9 Claim has been paid prior to the Effective Date or agrees to a different treatment, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, each holder of an Allowed Class 9 Claim shall receive a Pro Rata Distribution from a total distribution pool (the "***Class 9 Distribution Pool***"),[1] funded by the Debtor from the Reorganized Debtor's projected disposable income over the three-year Plan Payment Period as set forth in the Projection Analysis attached hereto as Exhibit 2. Distributions from the Class 9 Distribution Pool shall be made in equal annual installments commencing on the first anniversary of the Effective Date and continuing on each anniversary thereafter through the end of the three-year Plan Payment Period. The Debtor's projected treatment under Class 9 exceeds the value that holders of Allowed Class 9 Claims would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code, as demonstrated by the Liquidation Analysis attached hereto as Exhibit 1.

Additionally, upon the conclusion of all Avoidance Actions, in the event that the proceeds from the Avoidance Actions allow for payment in full of allowed Administrative Claims and Priority Tax Claims, the remaining proceeds from the Avoidance Actions shall be distributed pro-rata to allowed General Unsecured Claims.

**(c) Impairment. The Allowed Class 9 Claims are Impaired. Accordingly, each holder of an Allowed Class 9 Claim is entitled to vote to accept or reject the Plan.**

**6.10. <u>Class 10. Allowed Equity Interests</u>**

(a) Description. Class 10 consists of 100% of the Equity Interests in the Debtor held by Mark Anthony McGarity.

(b) Treatment. Upon the Effective Date, unless otherwise provided in the Plan or the Confirmation Order, Mark Anthony McGarity shall retain his 100% Equity Interest in the Debtor.

**(c) Impairment. The Allowed Class 10 Equity Interest is Unimpaired and is deemed to have accepted the Plan.**

## ARTICLE VII

## <u>PROVISIONS REGARDING VOTING AND DISTRIBUTIONS</u>

**7.01. <u>Solicitation of Votes</u>**

---

[1] The exact amount of the Class 9 Distribution Pool is currently unknown as the total amount of the Debtor's Tax Claims is not yet known. As stated elsewhere in this Plan, the Debtor disputes the amount asserted in the IRS's proof of claim and is engaged in ongoing discussions with the IRS regarding the appropriate Allowed Amount of the IRS's Priority Tax Claim.

Classes 1, 2, 3, 4, 5, 6, 8, and 9 are Impaired under the Plan. Accordingly, pursuant to sections 1126, 1129(a) and 1191(a) of the Bankruptcy Code, each holder of an Allowed Claim in Classes 1, 2, 3, 4, 5, 6, 8, and 9 is entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Court. Class 7 is Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, the holder of the Allowed Class 7 Claim is conclusively presumed to have accepted the Plan and is not entitled to vote. However, any holder of a Claim valued at an unknown amount and any holder of a Disputed Claim or Interest is not entitled to vote on the Plan unless estimated and allowed for voting purposes by the Court.

An Impaired Class of Claims or Interests will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims and Interests actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims and Interests actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Code or any Insider. A vote may be disregarded if the Court determines, After Notice and a Hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

Notwithstanding the foregoing, acceptance by an Impaired Class of Claims or Interests is *not* required to confirm the Plan. Pursuant to section 1191(b) of the Code, if all applicable requirements of section 1129(a) of the Code, other than paragraphs (8), (10), and (15) of that section, are met, the Court, on request by the Debtor, ***shall*** confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Impaired Class of Claims or Interests that has not accepted the Plan.

Class 10 is Unimpaired under the Plan. Accordingly, the holder of the Equity Interests in Class 10 is deemed to accept the Plan and is therefore not entitled to vote on the Plan.

**7.02. Method of Distribution Under the Plan**

(a) Subject to Rules 3010 and 3021, and notwithstanding section 1194(b) of the Bankruptcy Code, all Distributions under the Plan shall be made by the Reorganized Debtor (and not the Subchapter V Trustee) to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or proof of claim as of the Distribution Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of claim by such holder that provides an address different from the address reflected on the Schedules.

(b) Reserved.

(c) Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual Distribution shall be rounded as follows: fractions of 1/2 or greater shall be rounded to the next

higher whole number and fractions of less than 1/2 shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for such rounding.

(e) In the event that any Distribution to any holder is returned as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the Effective Date or the Distribution Date, whichever shall apply, and any entitlement of any holder of any Claim to such Distribution(s) shall be extinguished and forever barred.

(f) Unless otherwise provided herein, all initial Distributions and deliveries to be made on the Effective Date shall be made on the Effective Date. Subsequent Distributions shall be made in accordance with the terms set forth in the Plan and/or the Confirmation Order.

**7.03. <u>Procedures for Allowance or Disallowance of Disputed Claims</u>**

**(a) Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

All objection(s) to any Claim(s) must be filed within fourteen (14) days prior to the Confirmation Hearing, or as otherwise ordered by the Court (the "Objection Deadline"), or with respect to rejection claims, within fourteen (14) days following the Rejection Claim Bar Date (the "Objection to Rejection Claims Deadline"). The Debtor's failure to object to any Claim or Interest for voting purposes will not be deemed a waiver of Debtor's right to object to, or re-examine, any such Claim in whole or in part.

Subject to applicable law, from and after the Effective Date, the Reorganized Debtor will have the authority to file, settle, compromise, withdraw, arbitrate, or litigate to judgment any and all objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Rules and the Plan. If the Debtor settles any such objections to Claims, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim. If the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, the Debtor shall set the contested matter for hearing before the Court and will provide all interested parties with notice of the hearing to consider the claim objection.

Except as to Fee Requests for allowance of compensation and reimbursement of expenses under sections 330 and 503 of the Code, the Debtor or the Reorganized Debtor shall have the exclusive right to make and file objections to Administrative Claims and General Unsecured Claims subsequent to the Effective Date. All objections shall be litigated to Final Order; provided, however, that following the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any of its objections without approval of the Court. Unless otherwise ordered by the Court, the Debtor or the Reorganized Debtor shall file all objections to Claims and serve such objections upon the holder of the Claim as to which the

objection is made as soon as is practicable, but in no event later than one hundred twenty (120) days after the Effective Date or such later date as may be approved by the Court. The Debtor or the Reorganized Debtor reserves the right to object to Administrative Claims as such claims arise in the ordinary course of business. The Reorganized Debtor shall bear all costs and expenses relating to the investigation and prosecution of Disputed Claims from and after the Effective Date.

**(b) No Distribution Pending Allowance and Establishment and Maintenance of Disputed Claims Reserve**

Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim (in whole or in part).

Rather, on the first Distribution Date pursuant to the terms of the Plan and each subsequent Distribution Date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Disputed Claims, an amount equal to One Hundred Percent (100%) of the Distribution to which holders of Disputed Claims would be entitled to under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor or the Court in accordance with Section 7.06 of the Plan (the "Disputed Claims Reserve").

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to any Distribution Date shall receive Distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the subsequent Distribution Date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

If a Disputed Claim becomes a Disallowed Claim, the Reorganized Debtor shall distribute the amounts held in the Disputed Claims Reserve on account of such claim pro rata to the holders of Class 9 General Unsecured Claims.

**(c) Disallowed Claims**

All Claims held by Persons against whom the Debtor or the Disbursing Agent has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this paragraph shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

All Claims scheduled by the Debtor as disputed, contingent, or unliquidated and for which Claims a proof of claim has not been filed shall be deemed Disallowed Claims.

**7.04. <u>Disbursing Agent</u>**

Except as otherwise provided in the Confirmation Order, the Reorganized Debtor will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and

Equity Interests, and will make all Distributions required to be distributed under the applicable provisions of the Plan. Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan. Each Disbursing Agent will serve without bond, and each Disbursing Agent, other than the Reorganized Debtor, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor. The Disbursing Agent shall maintain a separate account for the Disputed Claims Reserve, if necessary.

**7.05. Setoffs and Recoupment**

The Debtor may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or Equity Interest, any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any setoff or recoupment right they may have against the holder of such Claim or Equity Interest.

**7.06. Estimations of Claims**

For purposes of calculating and making Distributions under the Plan, the Debtor, or the Reorganized Debtor, as applicable, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtor, Reorganized Debtor, and holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtor or Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**7.07. No Recourse**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor,

the Reorganized Debtor, or any of their respective Professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property with respect to such shortfall. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. For the avoidance of doubt, pursuant to 11 U.S.C. § 524(e), this paragraph shall not affect the liability of any non-Debtor entity on, or the property of any non-Debtor entity for, such debt.

***THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.***

**7.08. Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor, or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**7.09. No Post-Petition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**7.10. Unclaimed Funds**

If any Distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after the Distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such Distribution was made shall be canceled and said claimant shall not be entitled to any further Distributions hereunder. A Distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable. Any funds unclaimed shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Reorganized Debtor pursuant to section 347(b) of the Code.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01. Assumption or Rejection of Executory Contracts and Unexpired Leases**

**(a) Executory Contracts and Unexpired Leases**

Pursuant to sections 365(a) and (b) and 1123(b)(2) of the Code, all executory contracts and unexpired leases listed on the Debtor's Schedule G shall be ***assumed*** by the Reorganized Debtor as of the Effective Date of the Plan, ***except*** for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease is pending on the Effective Date. Any executory contract or unexpired lease of the Debtor that is not listed on Schedule G, and that is not otherwise assumed pursuant to the Plan or a Final Order of the Court, shall be ***rejected*** by the Reorganized Debtor as of the Effective Date of the Plan.

On the Effective Date, the Debtor will assume each executory contract and unexpired lease listed on Schedule G. The Debtor believes it is not in default of any agreements which will be assumed under the Plan and does not owe any cure payments. To the extent any cure amount is owing with respect to an assumed executory contract or unexpired lease, such cure shall be paid in accordance with Section 8.02 of the Plan and section 365(b)(1) of the Bankruptcy Code.

**(b) [Reserved]**

**(c) Insurance Policies**

Notwithstanding the provisions of Section 8.01(a) of the Plan, the Debtor's insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan and are hereby *assumed* pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code. Notwithstanding the foregoing, Distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtor may hold against any Entity, including, without limitation, the insurers under any of the Debtor's policies of insurance.

**(d) Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed under the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

## 8.02. Cure of Defaults

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed or provided for herein and/or in the Plan Supplement or in a motion requesting Court approval of assumption. To the extent that the non-debtor counterparty to any executory contract or unexpired lease disagrees with the cure amount listed in the Plan, the Plan Supplement or in the motion requesting Court approval of assumption, such party must file a notice of dispute with the Court

and serve such notice on the Debtor by no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtor, the Reorganized Debtor may elect to reject the contract or unexpired lease and not pay such greater cure amount.

**8.03. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Any party to an executory contract or unexpired lease rejected pursuant to the Plan with a claim for rejection damages under section 502(g) of the Code ("***Rejection Claim***") may file with the Court a claim within twenty-one (21) days from the date of service of the Confirmation Order and, if filed, shall serve a copy on the Debtor and its general bankruptcy counsel (the "***Rejection Claim Bar Date***"). The Debtor shall have fourteen (14) days from the filing of a Rejection Claim to file an objection to such Rejection Claim. Unless otherwise ordered by the Court, all Rejection Claims against the Debtor shall be treated in Class 9 under the Plan.

**ANY CREDITOR WHO FAILS TO FILE A REJECTION CLAIM ON OR BEFORE THE REJECTION CLAIM BAR DATE WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH REJECTION CLAIM AGAINST THE DEBTOR AND ITS ESTATE, AND THE DEBTOR AND ITS ESTATE, THE REORGANIZED DEBTOR OR ANY SUCCESSOR, AND PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH REJECTION CLAIM. IN ADDITION, THE HOLDER OF SUCH REJECTION CLAIM SHALL NOT BE PERMITTED TO PARTICIPATE IN ANY DISTRIBUTION IN THE CASE ON ACCOUNT OF SUCH REJECTION CLAIM OR RECEIVE FURTHER NOTICES REGARDING SUCH REJECTION CLAIM.**

**8.04. Indemnification Obligations**

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtor's certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive Confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

**8.05. Compensation and Benefit Programs**

Except as provided in the Plan, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, on or after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby ***assumed*** pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtor reserves the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

## ARTICLE IX

## MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

### 9.01 General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

### 9.02 Corporate Existence

Except as otherwise provided in the Plan, Mands Electric NC LLC as the Reorganized Debtor, shall continue to exist after the Effective Date, with all powers of a limited liability company, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is organized or formed and pursuant to the operating agreement and other organization documents in effect prior to the Effective Date. Following the Effective Date, the Reorganized Debtor may operate its business free of any restrictions imposed by the Code, the Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.

Pursuant to Section 6.10, Mark Anthony McGarity will retain his 100% equity interest in the Debtor.

### 9.03. The Reorganized Debtor

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of Equity Interests; provided, however, that if the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, section 1186 of the Bankruptcy Code shall apply and any property remaining in the estate by operation of section 1186 shall vest in the Reorganized Debtor on the date of the entry of a Final Decree free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims

and holders of Equity Interests. The Reorganized Debtor shall assume all of the Debtor's respective rights, obligations and liabilities under the Plan and the Confirmation Order.

**9.04. Effectiveness of Securities, Instruments and Agreements**

On the Effective Date, all documents or agreements identified in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

**9.05. Corporate Action**

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtor or Reorganized Debtor or its successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the new common stock and documents relating thereto, adopt and approve operating agreements and organizational documents, and the election or appointment, as the case may be, of directors and officers of the Reorganized Debtor pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to the applicable limited liability company law, without any requirement of further action by the stockholders or directors or members of the Debtor or Reorganized Debtor. On the Effective Date or as soon thereafter as is practicable, the Debtor shall, if required, file its amended articles of organization with the secretary of state of the state in which the Reorganized Debtor is organized, in accordance with the applicable general corporation law of such state.

**9.06. Approval of Agreements**

Entry of the Confirmation Order shall constitute approval of the Plan Documents and all such transactions, subject to the occurrence of the Effective Date.

**9.07. No Change of Control**

Any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

**9.08. Administration After the Effective Date**

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of his property, free of any restrictions of the Bankruptcy Code and Rules; provided, however, that if the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor must seek Court approval to sell substantially all of its assets.

**9.09. Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except as otherwise provided in the Plan.

**9.10. Re-vesting of Assets**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, pursuant to section 1141 of the Bankruptcy Code, the property of the Estate of the Debtor, including without limitation any Actions, shall re-vest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

**9.11. Causes of Action**

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any and all Avoidance Actions accruing to the Debtor, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, shall become assets of the Reorganized Debtor, and, subject to an order of the Bankruptcy Court providing otherwise, the Reorganized Debtor shall have the authority to commence and prosecute such Actions for the benefit of the Estate.

Funds received or recovered from any Avoidance Actions shall be distributed in accordance with the Plan, after payment of all applicable costs associated with the pursuit of such action(s), which shall be paid in full before the distribution of such proceeds. The statute of limitations of any and all Avoidance Actions, and actions in State or Federal court, not hereinbefore filed, shall be governed by their respective statutes of limitations, 11 U.S.C. § 108(a)(2), or 11 U.S.C. § 546(a)(1)(A), whichever deadline shall be later.

Notwithstanding anything to the contrary in the Plan, the provisions of the Plan, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any Avoidance Actions that the Debtor may assert, regardless of whether and to what extent such Avoidance Actions are specifically described in the Plan. Unless any Avoidance Actions are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such Avoidance Actions are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such Avoidance Actions upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that the Debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any Avoidance Actions. Finally, the Debtor retains all rights to assert and pursue all claims under 11

U.S.C. § 542, including without limitation actions to seek turnover of Estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

All litigation costs, fees, and expenses incurred in litigating or collecting on Avoidance Actions shall be treated as an Allowed Administrative Claim.

**9.12. <u>Discharge of Debtor</u>**

**(a) Consensual Plan Confirmed Under Section 1191(a) of the Code**

*Except as otherwise provided in the Plan and/or in the Confirmation Order, if the Plan is confirmed under section 1191(a) of the Bankruptcy Code, then upon the Effective Date of the Plan, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and the Debtor in Possession, the Estate, or any of the assets or properties under the Plan to the extent provided and described in section 1141(d) of the Bankruptcy Code and without further order of the Court. Except as otherwise provided in the Plan and/or in the Confirmation Order, (i) on the Effective Date, all such Claims against the Debtor, and Equity Interests in the Debtor, shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any Entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.*

**(b) Non-Consensual Plan Confirmed Under Section 1191(b) of the Code**

*Except as otherwise provided in the Plan and/or in the Confirmation Order, and pursuant to section 1192 of the Bankruptcy Code, if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, then upon the completion by the Debtor of all payments due within the first three (3) years of the Plan, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of the Bankruptcy Code and provided for in the Plan. Except as otherwise provided in the Plan and/or in the Confirmation Order, (i) upon the completion of the Plan, all such Claims against the Debtor, and Equity Interests in the Debtor, shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing*

*in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any Entity would be subject to as the owner or operator of property after the date of entry of the Confirmation Order.*

**9.13. Injunction Related to Confirmation**

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the property or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and its properties and interests in property.*

*For the avoidance of doubt, pursuant to 11 U.S.C. § 524(e), the discharge of the debts of the Debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.*

**9.14. Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such Entity may take in connection with the pursuit of appellate rights.*

**9.15. Votes Solicited in Good Faith**

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE X

## FUNDING AND FEASIBILITY OF THE PLAN

**10.01. Risks to Creditors**

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors. However, nothing contained herein shall be

construed to be advice on the tax, securities, or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

**10.02. Sources of Consideration for Plan Distributions**

Distributions under the Plan will be funded from the Reorganized Debtor's projected disposable income generated from its continuing electrical contracting operations, including accounts receivable collected from its residential home-builder customers, as reflected in the Projection Analysis attached hereto as Exhibit 2. To the extent that operating income is insufficient to make any required Plan payment, the Reorganized Debtor may draw upon its available cash reserves or, subject to any applicable Plan or Confirmation Order restrictions, from Distributions of any Avoidance Action recoveries against the MCA Creditors. The Debtor's principal, Mark Anthony McGarity, may, but shall not be required to, make additional capital contributions to the Reorganized Debtor as needed to support Plan payments.

**10.03. Best Interests Test and Liquidation Analysis**

With respect to each Impaired Class of Claims, pursuant to section 1129(a)(7) of the Bankruptcy Code, Confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

To determine what holders of Allowed Claims of each Impaired Class would receive if the Debtor was liquidated under chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in the context of a chapter 7 liquidation case by a chapter 7 trustee in bankruptcy. The cash amount that would be available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of the Debtor's non-exempt unencumbered assets, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the chapter 7 case. The Debtor's cost of liquidation under chapter 7 would include the fees payable to the chapter 7 trustee, as well as those fees that might be payable to other professionals that such trustee might engage. The foregoing types of claims and other claims, including administrative claims, that might arise in a chapter 7 case or result from the pending chapter 11 Case, including any unpaid fees and expenses incurred by the Debtor during the chapter 11 Case such as compensation or reimbursement for attorneys and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay Pre-Petition Allowed Claims.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for Distribution to Creditors in the Case, including (i) the increased costs and expenses of a liquidation under chapter 7, (ii) the increased amount of Allowed Claims in a liquidation under chapter 7, (iii) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" environment that would prevail, and (iv) the substantial increases in Claims which would be satisfied on a priority basis or on parity with Creditors, the Debtor has determined that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than

the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

A liquidation analysis prepared by the Debtor is attached to the Plan as Exhibit 1. The information set forth in the Liquidation Analysis provides a summary of the liquidation values of the Debtor's assets, as of the Petition Date, assuming a chapter 7 liquidation in which a chapter 7 trustee appointed by the Court would liquidate the Debtor's unencumbered, nonexempt assets. Reference should be made to the Liquidation Analysis for a complete discussion. The Liquidation Analysis was prepared by the Debtor with the assistance of counsel. Underlying the Liquidation Analysis is a number of estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtor is, in fact, to undergo such a liquidation. The Debtor has used its best estimation to provide the information set forth in the Liquidation Analysis.

When the Plan is compared to the Liquidation Analysis, the Debtor believes that there is slight risk to creditors and that Confirmation of the Plan is in the best interests of the Debtor's Estate. Under Class 9 of the Plan, the Debtor proposes to distribute on a pro rata basis an amount greater than the liquidation value of the Debtor's assets available for unsecured creditors. In other words, the Debtor's proposed treatment under Class 9 is greater than what creditors may obtain in a chapter 7 liquidation. Accordingly, the Debtor submits that holders of Allowed Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

**10.04. <u>Feasibility</u>**

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.

For purposes of determining whether the Plan meets this requirement, the Plan Proponent has prepared the financial projection analysis (the "Projection Analysis") attached hereto as Exhibit 2. As evidenced by the Projection Analysis, the Debtor will be able to provide the payments contemplated under the Plan. As contingency funding sources, the Reorganized Debtor may (i) draw upon cash reserves accumulated from operations, (ii) pursue and apply recoveries from Avoidance Actions against MCA Creditors as authorized by Rule 2004 examinations undertaken during the Case, and (iii) accept discretionary capital contributions from the Debtor’s managing member, Mark Anthony McGarity.

Based on the foregoing, the Plan Proponent believes that the Debtor will be able to provide for all payments required under the Plan. Accordingly, the Plan Proponent asserts that the Debtor is able to perform all of its obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**10.05. <u>Reserved</u>**

## ARTICLE XI

## EFFECTIVENESS OF THE PLAN

### 11.01. Conditions to the Effective Date

The Plan shall not become effective until the date (the "***Effective Date***") that is fifteen (15) days following the Court's entry of the Confirmation Order.

## ARTICLE XII

## RETENTION OF JURISDICTION

Except as provided in the Plan, the Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a) to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b) to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c) to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d) to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e) to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g) to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h) to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j) to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k) to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l) to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m) to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n) to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such Entity);

(p) to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q) to hear any other matter not inconsistent with the Code; and

(r) to enter a final decree closing the Case; provided, however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.01 Effectuating Documents and Further Transactions

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file and/or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 13.02 Exemption from Transfer Taxes

Pursuant to section 1146 of the Code, the issuance, transfer, or exchange of a security or asset under the Plan, or the making or delivery of an instrument of transfer under the Plan, shall

not be taxed under any law imposing a stamp tax or similar tax. As such, the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**13.03 Authorization to Request Prompt Tax Determinations**

The Debtor is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

**13.04 Exculpation**

*Subject to the occurrence of the Effective Date, neither the Debtor, or any of its members, officers, directors, and attorneys (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, or the consummation of the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person as provided in the Plan, or otherwise, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws. Nothing in the foregoing shall operate as an exculpation of, waiver of or release of the Debtor or the Reorganized Debtor with respect to Plan obligations.*

**13.04.1 Reserved**

**13.05 Injunction Relating to Exculpation**

*The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtor, the Reorganized Debtor and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.*

**13.06 Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**13.07 Amendment or Modification of Plan**

Modifications, alterations, or amendments of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Hearing in conformity with section 1193(a) of the Code, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122, and 1123 of the Code, with the exception of subsection 1123(a)(8). After the modification is filed with the Court, the Plan as modified becomes the Plan.

Pursuant to section 1193(b) of the Code, if the Plan has been confirmed under section 1191(a) of the Code, the Debtor may modify the Plan at any time after Confirmation of the Plan and before Substantial Consummation of the Plan in conformity with section 1193(b) of the Code, but may not modify the Plan so that the Plan as modified fails to meet the requirements of sections 1122 and 1123 of the Code, with the exception of subsection 1123(a)(8). The Plan, as modified under subsection 1193(b) of the Code, becomes the Plan only if circumstances warrant the modification and the Court, After Notice and a Hearing, confirms the Plan as modified under section 1191(a) of the Code. Pursuant to section 1193(d) of the Code, if the Plan has been confirmed under section 1191(a) of the Code, any holder of a Claim or Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such holder changes the previous acceptance or rejection of the holder.

Pursuant to section 1193(c) of the Code, if the Plan has been confirmed under section 1191(b) of the Code, the Debtor may modify the Plan at any time within three (3) years, or such longer time not to exceed five (5) years, as fixed by the Court, but may not modify the Plan so that the Plan as modified fails to meet the requirements of section 1191(b) of the Code. The Plan, as modified under subsection 1193(c), becomes the Plan only if circumstances warrant the modification and the Court, After Notice and a Hearing, confirms the Plan as modified under section 1191(b) of the Code.

Prior to the Effective Date of the Plan, the Debtor, without the approval of the Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission, or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

**13.08 Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to the provision is determined to be invalid, void or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.09 <u>Revocation or Withdrawal of the Plan</u>**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, or an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**13.10 <u>Binding Effect Notices</u>**

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

**13.11 <u>Notices</u>**

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Notices shall be sent or delivered to the following:

**To Mands Electric NC LLC, Reorganized Debtor:**
Mands Electric NC LLC
845 Village Road NE,
Leland, North Carolina 28451

With a copy to:
Waldrep Wall Babcock & Bailey PLLC
Attn: Ciara L. Rogers, Esq.
3600 Glenwood Avenue, Suite 210
Raleigh, NC 27612

**13.12 <u>Governing Law</u>**

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina, without giving effect to the principles of conflicts of law of such jurisdiction.

**13.13 <u>Withholding and Reporting Requirements</u>**

In connection with the consummation of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall comply with all withholding and reporting requirements imposed by any

federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**13.14 Section 1125(e) of the Code**

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Debtor and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

**13.15 Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.16 No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**13.17 Waiver of Bankruptcy Rule 3020(e) and 7062**

The Debtor may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

**13.18 Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

**13.19 Substantial Consummation**

Substantial Consummation of the Plan shall be deemed to occur under sections 1101 and 1193 of the Code upon satisfaction of all payments due under this Plan on or before the Effective Date.

**13.20 Final Decree**

Once there has been Substantial Consummation of the Plan, the Reorganized Debtor shall file a motion with the Court to obtain a final decree to close the Case.

### 13.21 Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 13.22 No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty, or other charge, including any late charge, arising from and after the Petition Date, and no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 13.23 Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, including without limitation the Reorganized Debtor, and its successors and assigns.

### 13.24 Headings

The headings of Articles, Sections and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 13.25 No Penalty for Prepayment

Neither the Debtor nor the Reorganized Debtor shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any claim treated under this Plan.

### 13.26 Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 13.27 Remedy of Defects

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor.

## ARTICLE XIV

## CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtor, the Reorganized Debtor, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**Dated: July 30, 2026**

**DEBTOR IN POSSESSION:**

MANDS ELECTRIC NC LLC
By: *_/s/ Mark Anthony McGarity_*
Mark Anthony McGarity
Its: Managing Member

Respectfully submitted,

**WALDREP WALL BABCOCK & BAILEY PLLC**

*_/s/ Jennifer B. Lyday_*
Jennifer B. Lyday
N.C. Bar No. 39871
Ciara L. Rogers
N.C. State Bar No. 42571
Zachary Malnik
N.C. State Bar No. 61807
3600 Glenwood Avenue, Suite 210
Raleigh, NC 27612
Telephone: (919)-589-7985
Email: jlyday@waldrepwall.com

*Counsel for the Debtor*

| | | |
|---|---|---|
| **MANDS Electric NC LLC: Case No. 26-01997-5-DMW** | | |
| **Exhibit 1 - Liquidation Analysis** | | |
| | | |
| **Assets Available for Distribution in Chapter 7 Liquidation** | **Liquidation Value of Assets** | **NOTES** |
| Cash on Hand | $ 96,763.12 | Cash on hand at the end of the month as reported in Debtor's June 2026 Monthly Operating Report |
| Cash Equivalents (Security Deposits, Insurance Prepayments) | $ 26,424.05 | |
| Accounts Receivable in Context of Sale of Ceased Operations | $ 180,000.00 | Assumes 60% recovery on outstanding accounts receivable |
| Office Furniture, Fixtures, Equipment | $ 12,600.00 | Assumes 60% of fair market value |
| Inventory - Daily Job Materials (electrical devices, wire, etc.) | $ 48,000.00 | Assumes 60 % of fair market value |
| Vehicles with Equity | $ 64,994.02 | Assumes 60% of fair market value |
| **TOTAL** | **$ 428,781.19** | |
| | | |
| | | |
| | | |
| **Less the Following Liabilities, Costs, and Expenses** | | |
| | | |
| Chapter 7 Auctioneer Fees - Personal Prop. | | |
| 20% of first $20,000 | $ 4,000.00 | |
| 10% of next $50,000 | $ 5,000.00 | |
| 4% of Balance | $ 2,223.76 | |
| | | |
| Trustee's Commission | | |
| 25% of first $5,000 | $ 1,250.00 | |
| 10% of next $5,000 to $50,000 | $ 5,000.00 | |
| 5% of the next $50,000 to $1,000,000.00 | $ 18,689.06 | |
| 3% of the balance | $ - | |
| | | |
| Chapter 11 Administrative Claims (est.) | $ 100,000.00 | |
| | | |
| **Total liabilities, costs, and expenses** | **$ 136,162.82** | |
| | | |
| **TOTAL AVAILABLE FOR PRIORITY TAX CLAIMS AND GENERAL UNSECURED CREDITORS** | **$ 292,618.37** | |

| MANDS Electric NC LLC: Case No. 26-01997-5-DMW | Q4 2026 | Q1 2027 | Q2 2027 | Q3 2027 | Q4 2027 | Q1 2028 | Q2 2028 | Q3 2028 | Q4 2028 | Q1 2029 | Q2 2029 | Q3 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Exhibit 2 - Projections of Income, Expenses, and Plan Payments** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **BEGINNING CASH BALANCE** | $100,000.00 | $83,636.30 | $167,272.60 | $250,908.90 | $334,545.20 | $398,158.70 | $466,353.70 | $534,548.70 | $602,743.70 | $650,003.70 | $697,263.70 | $744,523.70 |
| | | | | | | | | | | | | |
| **INCOME** | | | | | | | | | | | | |
| Gross Revenue | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 | $1,625,000.00 |
| Cost of Goods Sold | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 | -$568,750.00 |
| **TOTAL INCOME:** | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 | $1,056,250.00 |
| | | | | | | | | | | | | |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| Officer Compensation | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 |
| Salaries and Wages | $677,500.00 | $677,500.00 | $677,500.00 | $677,500.00 | $697,825.00 | $697,825.00 | $697,825.00 | $697,825.00 | $718,760.00 | $718,760.00 | $718,760.00 | $718,760.00 |
| Repairs and Maintenance | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 | $970.00 |
| Rents | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 | $11,400.00 |
| Taxes and Licenses | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 | $12,675.00 |
| Advertising | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 | $369.00 |
| Pension/Profit-Sharing | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 | $8,200.00 |
| Employee Benefit Programs | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 | $10,920.00 |
| Depreciation | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| Other Operating Expenses | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 | $162,500.00 |
| **SUBTOTAL - OPERATING EXPENSES:** | $952,034.00 | $952,034.00 | $952,034.00 | $952,034.00 | $972,359.00 | $972,359.00 | $972,359.00 | $972,359.00 | $993,294.00 | $993,294.00 | $993,294.00 | $993,294.00 |
| **NET OPERATING INCOME** | $104,216.00 | $104,216.00 | $104,216.00 | $104,216.00 | $83,891.00 | $83,891.00 | $83,891.00 | $83,891.00 | $62,956.00 | $62,956.00 | $62,956.00 | $62,956.00 |
| **PLAN PAYMENTS** | | | | | | | | | | | | |
| Unclassified Administrative Claims | $100,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Priority Tax Claims | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Other Tax Claims | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Plan Debt Service - Secured Claims (Classes 1-6) | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 |
| Plan Debt Service - Secured Claim (Class 7) | $4,883.70 | $4,883.70 | $4,883.70 | $4,883.70 | $4,581.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | | | | | | | |
| **SUBTOTAL - PLAN PAYMENTS:** | $120,579.70 | $20,579.70 | $20,579.70 | $20,579.70 | $20,277.50 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 | $15,696.00 |
| | | | | | | | | | | | | |
| **TOTAL EXPENSES:** | $1,072,613.70 | $972,613.70 | $972,613.70 | $972,613.70 | $992,636.50 | $988,055.00 | $988,055.00 | $988,055.00 | $1,008,990.00 | $1,008,990.00 | $1,008,990.00 | $1,008,990.00 |
| | | | | | | | | | | | | |
| **NET INCOME (AVAILABLE FOR ADDITIONAL PLAN DISTRIBUTIONS):** | -$16,363.70 | $83,636.30 | $83,636.30 | $83,636.30 | $63,613.50 | $68,195.00 | $68,195.00 | $68,195.00 | $47,260.00 | $47,260.00 | $47,260.00 | $47,260.00 |
| | | | | | | | | | | | | |
| **ENDING CASH BALANCE:** | $83,636.30 | $167,272.60 | $250,908.90 | $334,545.20 | $398,158.70 | $466,353.70 | $534,548.70 | $602,743.70 | $650,003.70 | $697,263.70 | $744,523.70 | $791,783.70 |

**ASSUMPTIONS AND NOTES**

1. The projection covers the three-year plan term beginning Q4 2026 (12 quarters), presented quarterly with Plan Year and three-year totals.
2. Gross revenue  and cost of goods sold is held constant across all three Plan Years.
3. Salaries and wages increase 3% per year.
4. Officer compensation of $150,000/year reflects the Court's Order on the Application for Officer Compensation, which caps total annual officer compensation at $150,000, with the excess held in escrow pending further order of the Court.
5. Plan Debt Service reflects the fixed monthly installments on the Allowed Secured Claims of Classes 1–6 (Ally, GM Financial, Chase, TD Auto, Towne Bank, Santander) at the 8.75% Till rate over 60 months. PNC (Class 7) is paid per its existing loan documents.
6. Priority Tax Claims and Other Tax Claims are not currently projected to receive payment because such claims are disputed and subject to ongoing negotiation; the Debtor expects to file an amended plan reflecting its resolution of these disputes.